## In re CAROLINA COOPERAGE CO.

(District Court, E. D. North Carolina. October 13, 1899.)

1. BANKRUPTCY—COMMISSIONS OF TRUSTEES.

Bankr. Act 1898, § 48a, providing that trustees in bankruptcy shall be compensated for their services by commissions, not exceeding a certain percentage, on the sums paid as dividends and commissions by the estates administered, is mandatory, and must be followed; and a court of bankruptcy has no authority to allow to a trustee a lumping sum in lieu of commissions calculated as the act directs.

2. SAME—SERVICES AS AGENT OF COURT.

Where, at the time of the bankrupt's adjudication, its property was in the hands of a sheriff under an execution levied, and the court of bankruptcy ordered the marshal to take the property, and appointed an agent to make sale thereof, who took possession, and advertised the sale, and was thereafter elected trustee of the bankrupt's estate, and then made the sale, *held*, that he was not entitled to compensation for services rendered as agent of the court, in addition to the commissions to be allowed him as trustee.

**3. SAME—PRIORITY OF CLAIMS—WORKMEN AND SERVANTS.**

The president of a business corporation, who has supreme authority in managing and directing its affairs, and receives a salary of $700 per annum for his services in that capacity, is not a "workman, clerk, or servant" of the corporation, within the meaning of Bankr. Act 1898, § 64b, giving priority of payment out of bankrupt estates to wages due to such persons.

**4. SAME—ATTORNEYS' FEES.**

In a case of involuntary bankruptcy, where all the bankrupt's property was taken from the possession of a sheriff, and sold under orders of the court of bankruptcy, and thereafter there was no litigation directly interesting the bankrupt, or in which he was actively engaged, so that the bankrupt's attorney had no duties to perform except to fill out the schedules, and give legal advice, *held*, that an allowance of $75 to such attorney was excessive, and should be reduced to $25.

**5. SAME—REFEREE'S EXPENSE ACCOUNT—CLERK HIRE.**

A referee in bankruptcy is not entitled to charge, as a part of his expense account against an estate administered before him, the cost of "clerical aid." There is no authority for the hire of a clerk by the referee.

**6. SAME—FEE TO ATTORNEY OF TRUSTEE.**

The court of bankruptcy, in its discretion, may refuse to allow a fee to the attorneys for the trustee in bankruptcy, when the same attorneys have been allowed a fee as attorneys for the petitioning creditors, which covers any services rendered to the trustee or the estate.

In Bankruptcy. On final report of referee in bankruptcy.

PURNELL, District Judge. This case is again before the court upon the final report of the referee and settlement of costs. But two items are excepted to.

First. The allowance of $100 to the trustee in lieu of the 3 per cent. commission allowed by the statute. This exception is sustained. Section 48a, Act 1898, provides a trustee shall receive as full compensation for his services a fee of $5, and commissions not to exceed 3 per cent. on the first $5,000 or less, etc. Even if the statute had not thus limited the compensation of this officer, the United States supreme court, in rule 35, § 3 (18 Sup. Ct. ix.), has done so in the following language: "The compensation allowed to trustees by the act shall be in full compensation for the services performed by them; but shall not include expenses necessarily incurred in the performance of their duties and allowed upon the settlement of their accounts." This is conclusive. Neither the referee nor judge can make an allowance in violation of the statute and rules. But it is said the trustee was an agent of the court for the sale of the property of the bankrupt corporation. The facts are that all the property of the bankrupt was in the hands of the sheriff under an execution issuing from a state court, when it was, under an order of this court, taken into possession by the marshal. On account of the expense incident to preserving the estate, a sale was ordered, and C. L. Taylor, by consent, appointed agent to make the sale. After this the same gentleman was selected as trustee, and made the sale after such selection. The only service performed before such selection was to take possession of the property and advertise it. These are services the bankruptcy act contemplates the trustee shall perform, and when the sale was actually made he was trustee. The referee proposes

to amend his report by allowing the 3 per cent. commission, and then a special allowance as agent to make this sale. This would be an evasion the court cannot countenance. It is not contemplated in the law. Allowances are in the sound judicial discretion of the court. Suppose the sale was made as agent of the court, as contended, then all the services performed by the trustee were to receive and hold the proceeds of sale, and his maximum commissions are not to exceed 3 per cent. The minimum commissions would be allowed. Both agent and trustee being the same, the 3 per cent. is ample compensation for all the services performed, and the only compensation allowed under the act. As before said in Re Woodard, 95 Fed. 956: "One of the purposes of the act of 1898 in establishing a uniform system of bankruptcy was to avoid what was the principal cause of the repeal of the bankruptcy act of 1867,—excessive fees and great expense." This being so, the law should be administered at the minimum cost consistent with efficient service. This being the manifest intention of congress, it is incumbent on the bankruptcy court and its officers to so administer the law. To do otherwise is to violate the law. Parties should not accept office under the bankruptcy act in ignorance of the fees allowed by law; and when they inadvertently do so, and are dissatisfied with the fees allowed, they can relieve themselves of the burden without the nominal expense of a postage stamp, by a few lines resigning the trust, sent under a frank as official business. Vacancies can always be filled without much delay. The trustee will be allowed the 3 per cent. commissions as provided in section 48a, rule 35, and no more.

The second exception is to item 4, as to debts having priority and to be paid in full, as follows: A. H. Slocumb's salary as president of the bankrupt corporation at a rate of $700 per annum from October 27, 1898, to January 27, 1899,—$175. This exception is sustained. No authority can be cited for the contention that this debt, if it be a debt, should have priority over claims of persons whose funds have been swallowed up in the bankrupt corporation, but the spirit of the law and the decisions is against it. The citation of the definition of "wage earner" in section 1, subsec. 27, cannot aid the claimants. This definition was intended for other sections of the act, as a cursory examination will show any logical mind. But the section, and the only section, under which it is claimed Slocumb has a priority, is section 64b, which limits the priority of wages to be paid to workmen, clerks, and servants which have been earned within three months. Slocumb was neither a workman, a clerk, nor a servant, in the sense in which these limiting words are used. If congress had intended this provision to extend to presidents of commercial corporations, it would have said so. Presidents of such corporations do not generally act as workmen, clerks, or servants, but exercise authority over these classes, occasionally arbitrary and oppressive, but always in a way to let them know the president is not one of them. There is no evidence before the court that Mr. Slocumb was an exception to the general rule; no evidence he did any work; no evidence he kept

the books, or even the minutes, of the corporation, as clerk, or acted in the capacity of servant. He was not a servant, for he had no master over him, but was presumably supreme in the body. Men who have attained position, and in their own minds regard themselves as rulers, often in a bombastic way proclaim themselves the servants of the people. It is diplomacy, and in some quarters regarded as good form. Possibly, in this way, a president of a commercial corporation may regard himself as the servant of the corporate body, but this is not what is contemplated in the statute. The classes to whom it was evidently the intention of congress to give priority is that class who labor and serve; parties who, under the laws of some states, would have a lien, or at least be preferred to other creditors in the settlement of an estate. The president of a commercial corporation does not fall under this head. The same view of this section was taken by Phillips, district judge, Western district of Missouri, in Re Grubbs-Wiley Grocery Co., 96 Fed. 183. The case was almost "on all fours" with the one at bar. The learned judge says:

"Indeed, it would present a remarkable feature of the bankrupt act if the managing officers of a business corporation could vote themselves salaries ad libitum, and after, by their management, wrecking the company, and inviting an adjudication in bankruptcy, they could, to the exclusion of other creditors of the concern, whose money and property they had obtained on credit, come in as preferred creditors to the exclusion of such general creditors."

The president of a corporation was evidently not in the mind of the lawmakers. This claim cannot be allowed a priority, and will be stricken from that list.

The attorney's fees which the court may allow under section 64, subsec. 3, must be reasonable. In view of what has already been said,—the course of the proceeding, and the fact that there has been no litigation, since the sale, in which the bankrupt was directly interested or actively engaged,—it is evident that an attorney for the bankrupt would not have had onerous duties to perform, or any duty other than filling out blank schedules, and giving legal advice. Seventy-five dollars for this service is excessive. Twenty-five dollars is ample and reasonable for the service which could probably be required in connection therewith. It is therefore ordered that the allowance to the bankrupt's attorney be reduced from $75 to $25, and no more paid by the trustee on this account.

There is no authority for the hire of a clerk by a referee, and the item in the referee's expense account of $10 for "clerical aid and stationery" is disallowed. There is no voucher filed for the stationery, as required, which is probably the smallest part of the item. Such items, under rule 35, § 2 (18 Sup. Ct. ix.), can only be allowed by order of the judge. If a referee could thus hire a clerk at $10, he could hire some one to attend to all except the judicial duties of the office, while he attended to other business, and thus, under an act and rules limiting his compensation in plain terms, increase the cost of a proceeding in bankruptcy far beyond any of the extravagance under the act of 1867. This item will be stricken from the expense account of the referee.

The ruling of the referee refusing to recommend a fee to the attorneys for the trustee on the ground that the same attorneys are allowed a fee as attorneys for the petitioning creditors, which covers any service rendered in this behalf, is affirmed. The allowance of any attorney's fee is a matter within the sound judicial discretion of the court (section 64, subsec. 3), and should be exercised in accordance with the spirit and purposes of the act as to costs and expenses, due regard being always paid to the ends of justice, equity, and economy.

There are other items in the final report which do not seem to be in exact compliance with the intent of the bankrupt law, but, having passed the scrutiny of the counsel representing all the parties interested, it is presumed upon explanation these items are satisfactory to all, and, except as herein otherwise decided, the report is affirmed.