In re DURAN MERCANTILE CO.

(District Court, D. New Mexico. October 5, 1912.)

No. 12.

*(Syllabus by the Court.)*

1. BANKRUPTCY (§ 482*)—FEES OF ATTORNEYS—"COST OF ADMINISTRATION."

Whether fees claimed by the attorney for the bankrupt are allowable depends upon whether the services rendered were for "cost of administration"; that is, whether as rendered they conduced to the benefit of the estate and its prompt administration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*

For other definitions, see Words and Phrases, vol. 2, p. 1640.]

2. BANKRUPTCY (§ 317*)—FEES OF ATTORNEYS—REDUCTION IN TAXES.

Under this rule services by the attorney for the bankrupt in securing a reduction in the taxes charged against the estate are properly for compensation out of the estate, where rendered just before bankruptcy proceedings and with the view thereto, and where the effect was to reduce considerably what would otherwise have been a paramount lien upon the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 493–495; Dec. Dig. § 317.*]

3. BANKRUPTCY (§ 482*)—FEES OF ATTORNEYS—SECURING STAY ORDER—DRAWING PAPERS—ATTENDING BANKRUPT BEFORE REFEREE.

Under this rule, and for reasons similar to those last given, services in securing a stay order against the prosecution of an attachment suit in the state court, pending at the date of adjudication, are properly considered in fixing the fee, as are services in drawing the schedules and other papers necessary to the adjudication, and services necessarily performed in attending the bankrupt before the referee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

4. BANKRUPTCY (§ 482*)—FEES OF ATTORNEYS—SECURING DISCHARGE.

Services rendered the bankrupt in securing his discharge are no part of the "cost of adjudication," and may not be allowed for in fixing attorney's fees.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

5. BANKRUPTCY (§ 482*)—FEES OF ATTORNEYS—AMOUNT.

In the present case, *held*, that $50 was ample compensation for preparing and filing schedules and other papers necessary to the adjudication, $25 for attending the bankrupt before the referee, and $25 for se-

---

curing the stay order against the prosecution of the case in the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

In the matter of bankruptcy of the Duran Mercantile Company. On motion to fix fees of attorney for bankrupt.

Renehan & Wright, of Santa Fé, N. M., for attorney.

Frances C. Wilson, of Santa Fé, N. M., for trustee.

POPE, District Judge. This is a matter perhaps of importance as a precedent, as there will be from time to time this question of attorney's fees for bankrupts coming before the court. The court will therefore commit to record its views as to this particular fee.

It is, of course, realized that charges in any particular case are regulated by its peculiar facts, yet there are general considerations which affect the matter of compensation to bankrupt's attorneys in all cases. The bankruptcy law, of course, is framed with the idea of administration with the greatest possible economy, and, as expressed in some authorities, the purpose of the act is to administer so that allowances shall be made sparingly and with great caution. The fee here claimed is $250 in an estate involving some $4,500.

[2] The first service which the court has to deal with is that in connection with the reduction of taxes. While this appears to have been rendered prior to the adjudication, yet, according to the undisputed testimony, it was rendered as a part of the consultation with the bankrupt, and with the view to these bankruptcy proceedings. It involved a trip to Estancia, a point some 50 miles away, with a view to examining the records, in order that this charge, which, being for taxes, would be a preferred claim upon the assets, might be reduced, and thus leave more available to the general creditors.

Now, while it is true that counsel fees incurred by the parties who subsequently became bankrupt, and not tending in any way to the advantage of the future estate, cannot be deemed a proper charge, in cases such as this, as a part of counsel fees allowable under the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), this particular service was for the benefit of the estate, and was given looking towards a bankruptcy proceeding, and in order that there might be available greater assets applicable to general as distinguished from preferred creditors. It would thus seem that that class of services is properly included in the compensation allowed the attorney of the bankrupt under the Bankruptcy Act. For this service it is my view that a reasonable fee would be $75. This is not too much, for counsel was necessarily absent from his office for a couple of days on the trip to Estancia. In addition, the benefit accruing to the estate was considerable. The trip and the subsequent consultations with the district attorney resulted in a tax charge of $600 or $700 being reduced probably a half, thus benefiting this estate some $350. For this it would seem that $75, even on the basis of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

allowing these claims sparingly and with great caution, is not improper.

[3] The next service was for drawing and filing the schedules and other court papers. Ordinarily the court would feel in these bankruptcy cases that for this class of service, which is largely clerical, a fee of $25 would be sufficient. These schedules, as a rule, can be made out by the debtors themselves, if they have reasonable intelligence, and the utmost that can be required is perhaps an occasional consultation with their attorney as to what is a just claim, and his assistance in entering the schedules upon the proper printed forms.

This case, perhaps, calls for larger compensation, in that it was a partnership matter, and in that these bankrupts lived at a great distance from Santa Fé, entailing some correspondence. The testimony also is that it took some four or five days to complete the schedules. While this amount of time may seem excessive, yet, after all, the undisputed testimony shows that this amount of time was taken. There may have been other circumstances that required it. The court, therefore, in view of the facts alleged and shown, will in this case allow $50 as a reasonable charge for the preparation and filing of these schedules.

The next claim is for attending the bankrupt on several days before the referee. The court deems this attendance, if really for any great length of time, as largely unnecessary. There is nothing to show, either from the record or from the oral testimony, that there was any attack made upon the good faith of these bankrupts. Their presence before the referee was purely for the information of creditors. Presence of their counsel was hardly necessary, unless, perhaps, for the first day, because all they had to do was to tell what they knew about the business, and, if their failure was an honest one, no advice was necessary as to how to tell the truth. In this class of cases the court will consider, unless exceptional circumstances are shown, that an allowance of $25 for assistance by the attorney to the bankrupt rendered before the referee is reasonable, and that will be allowed in this case.

Now, as to the next item, the matter of the stay order secured against the attachment proceedings brought by one of the creditors in the district court of Torrance county, the court's view is that this is compensated properly out of the estate. It goes to the administration of the estate that this suit should be arrested; otherwise, the assets of the estate will be diverted, and not applicable to this proceeding. The work thus involved, however, was very small. The files show that there was a petition presented and a stay order granted the same day, with leave to the attachment creditor to move to vacate it later, if so advised. This was never attempted, and therefore it stood. The court would think that the securing of such an order, which is ordinarily granted ex parte and as a matter of course, would be so formal a service as ordinarily to call for not more compensation than $25. That will be allowed here.

[1, 4] The only remaining item of service is for securing the discharge of the defendant, which involved the filing of the petition,

giving the proper notice, and securing of an order of discharge. The authorities seem to differ as to whether this is a proper charge against the estate. In re Brundin (D. C.) 112 Fed. 306; In re Christianson (D. C.) 175 Fed. 867. The wording of the statute—Bankruptcy Act, § 64b (3)—is "for cost of administration," including an attorney's fee for one attorney for the bankrupt in voluntary cases. When, therefore, we look at the attorney's fee, we must look at it in the light of the question as to whether or not it is "cost of administration"; that is, whether the services rendered went to the benefit of the estate or the progress of the administration of the estate. Now, the discharge of a bankrupt is a collateral matter. If he does not care to be discharged, he need never be, and in that event the estate will nevertheless be closed. His discharge is of no relevancy to the creditors. It is a matter that concerns him and his future, not the estate. I think, therefore, that the cost for this is not to be allowed as part of the compensation of the attorney for the bankrupt, and it will be accordingly disallowed.

[5] The total amount allowed in this case, in view of two unusual elements of expense, to wit, the trip to Estancia and this application for a stay order in the state court, will therefore be $175. Relieved of these two items, the compensation would be only about $75, and the court's view is that in these cases an allowance of $75 or $100 is ordinarily quite ample for the services, largely formal, which attorneys for bankrupts will be called upon to render as a part of the cost of administration.

It will be noted that this is perhaps twice as much as is allowed in some jurisdictions. In re Covington (D. C.) 132 Fed. 884; In re Talton (D. C.) 137 Fed. 178; In re Brundin (D. C.) 112 Fed. 306; In re Kross (D. C.) 96 Fed. 816; In re Carolina Cooperage Co. (D. C.) 96 Fed. 950. It thus leaves a considerable margin for what has been said on the hearing as to the difference in the cost of personal and professional maintenance as between this and other sections.