# IN THE MATTER OF K. L. WONG (OTHERWISE CALLED WONG TIN), A BANKRUPT.

## May 31, 1913.

1. *Bankruptcy—Discharge—Concealment of assets, preference:* · A bankrupt is refused discharge under the following circumstances: Pressed by creditors and desiring to go into bankruptcy, he packs for shipment to out-of-town correspondents about $65 worth of his merchandise, to be by them sold as a means of obtaining the deposit of $40 required by court on filing petition. Later, on the same day, the store is closed by arrangement between his attorney and the creditors' attorneys, whereby he is to go into bankruptcy as soon as schedules can be prepared, and meantime preserve his merchandise stock intact. Ten days thereafter, he ships the packed goods as planned and immediately files petition, paying the deposit with money borrowed from a friend. Ten weeks or more later, the goods are returned unsold and the bankrupt sells them for about $48, paying therewith the loan of $40 and small charges for freight and cartage, and keeping the balance of about $5, without accounting therefor to the trustee: though the bankrupt alleged his regard of these goods as security for the loan and disclaimed intent to defraud creditors, in the face, however, of the facts, that the only understanding with the lender was that repayment be made within two months, and that the lender was not mentioned in the schedules as a secured creditor, or these goods mentioned as the bankrupt's own subject to lien.

2. *Same—Attorney's fees, attorney for voluntary bankrupt:* Attorneys for voluntary bankrupts should, as a rule and in the absence of extraordinary circumstances, be· allowed only a small fee for services in aid of preparing schedules; and the same policy applies to services for attending meetings of creditors. For preparing petition for discharge,· and attendance at hearing thereon, no fee is allowed under the foregoing circumstances. The mere fact that the bankrupt's accounts are voluminous is not, under the above rule, an extraordinary difficulty calling for legal services commanding more than a nominal fee; the attorney is not to be compensated on any basis of even common legal skill or knowledge for matters which require merely the routine services of a clerk or bookkeeper.

*In Bankruptcy:* Petition for· discharge; petition for attorney's fees.

*I. M. Stainback (Holmes, Stanley & Olson* with him) for the petitioning creditors.

*E. A. Douthitt (Douthitt & Coke* with him) for the bankrupt.

CLEMONS, J.   [1] On opposition of the creditors to the bankrupt's petition for discharge, the following facts appear:   The bankrupt, a Honolulu dry-goods merchant, hard pressed by creditors through legal proceedings and otherwise, desired to go into bankruptcy, but, as he claims, was unable to raise the necessary deposit of $40 required by the court on filing petition.   Finally, according to his statement, he packed for shipment to correspondents on the Island of Kauai about $65 worth of merchandise from his stock, to be by them sold, in order that he might secure the means wherewith to pay this deposit.   Later on the same day, his store was closed, by arrangement between his attorney and the attorney for the creditors, whereby he was to go into bankruptcy as soon as schedules could be prepared, and meantime preserve his stock intact.   Ten days thereafter, he shipped the packed goods as planned, and immediately, i. e. in the same forenoon, filed his petition in bankruptcy, paying the deposit, or filing fee, with money then borrowed from a friend.   Ten weeks or more thereafter the goods were returned unsold, and thereupon the bankrupt sold them for $47.84, paying therewith the loan of $40 and small charges for freight and cartage, and keeping the balance of $5.27, without accounting therefor to the trustee, meanwhile appointed, or without having mentioned these goods in his schedules.   The bankrupt alleges that he regarded these goods as security for the loan and disclaims any intent to defraud creditors;—though he himself testified to no understanding with the lender other than that the loan should pe repaid within two months, and though the lender is not mentioned in the schedules as a secured creditor, or at all so far as this loan is concerned, and though

these goods are not mentioned therein as being the bankrupt's property subject to lien.

The inexplicable discrepancies appearing in statements of the bankrupt made here in court, made at a hearing before the referee, and made to those who testified here, it would be unprofitable to set forth. It need only be said, that the testimony and the record force the conviction, that the bankrupt, if not intending to deal unfairly toward his creditors with regard to these particular goods, is at least reasonably chargeable with such an intent under all the circumstances. If he did not know better, he should with his education and experience have known better than to act as he did. His acts were a plain violation of the spirit of the statute, sec. 7, clause "a," subdiv. (8), sec. 60, clause "b," sec. 70, clause "a," 30 Stat. 548, 562, 565, and directly within the contemplation of section 14, clause "b," subdivs. (1), (4), 30 Stat. 550. See Collier, Bankruptcy, 9th ed., 335-340, 342-343, 356-357.

As junior counsel for the creditors wisely argues: Of what force as against designing debtors is the bankruptcy law, if we are to let a bankrupt merchant decide what he is to do with his goods, at what price he is to dispose of them pending bankruptcy proceedings, and to whom he is to pay the proceeds by way of preference, if he thinks best to sell them,—all in the face of his own attorney's express instructions (as is the fact here) not to disturb his goods when his store is closed in contemplation of an agreed bankruptcy?

Let the petition for discharge be denied.

As to the duty of the bankrupt and the right of the trustee, with reference to the money realized from the sale in question, these are matters for the consideration of the trustee and of the bankrupt, hardly calling for any further suggestion from the court.

[2] The attorneys for this voluntary bankrupt move for

allowance of a fee, and in support thereof show by affi-davit an estate comprised of $550 in cash and merchan-dise valued at $2,350 (though it is not stated whether this is the value as appraised), and show services consisting of preparation of schedules "which took the greater por-tion of one week," involving "a careful examination of the books, accounts, papers and documents" of the bankrupt "and the segregation and classification thereof," also the attendance "at the meeting when the trustee was elected", also the preparation of "petition for discharge of the bank-rupt . . . with the order of publication thereof," and attendance in court at the hearing on this petition.

The petition was heard after notice to referee and trustee, but not to creditors,—as none seems to be required except by rule: *In re Stotts*, 93 Fed. 438, 1 Am. B. R. 641; 2 Rem-ington, Bankruptcy, 1275-1276, sec. 2053; and as none has ever been required under the practice here, so far as the present judge's considerable experience in local bankruptcy practice informs him.

The matter of fees to attorneys for the bankrupt in vol-untary cases is such "as the court may allow," act, sec. 64, clause "a," subdiv. "(3)," 30 Stat. 563, am. 32 Stat. 800, sec. 14, am. 34 Stat. 267. This gives the court a wide dis-cretion but still a discretion to be exercised with due regard to the spirit of the statute. Collier, Bankruptcy, 9th ed. 845, and n. 71; 2 Remington, Bankruptcy, 1293, sec. 2089. See Id., 1296-1298, sec. 2097. "The maximum fee in volun-tary procedings, where there is no unforeseen litigation or extraordinary services" is fixed by rule of the court for the district of North Carolina, at $50. *In re Morris*, 125 Fed. 841, 11 Am. B. R. 145.

A fee for services in the preparation of schedules is allow-able: *In re Stratemeyer*, 2 U. S. Dist. Ct. Haw. 269, 14 Am. B. R. 120; *In re Hitchock*, 3 U. S. Dist. Ct. Haw. 138, 17 Am. B. R. 664; *In re Levy Outfitting Co., ante,* pp. 86, 91, 29 Am. B. 13; but insofar as these services are, though

laborious, merely the work of a bookkeeper or "mainly clerical" (*In re Mayer*, 101 Fed. 695, 697, 4 Am. B. R. 238, 241), and do not require the knowledge or discretion of one learned in the law, the court is disposed not to allow to the attorney any considerable compensation therefor.

In the eastern district of Wisconsin, the "customary allowance for services in drafting schedules is from $25 to $50, according to the extent." *In re Mayer*, supra  In *In re Carolina Cooperage Co.*, 96 Fed. 950, 3 Am. B. R. 154, where there had been no litigation and where the services to the bankrupt had not been onerous, an allowance of $75 was held excessive and was reduced to $25.  See *In re Meis*, 18 Am. B. R. 104, 108.

No reason is apparent why the advising in an ordinary case,—and this case, so far as concerns the necessity for legal advice and aid in the matter of schedules, does not seem to be extraordinary,—should call for more compensation than the above minimum of $25, and this sum is hereby allowed for such services; though this figure is not approved as being the minimum to be observed in the practice of this court, for the preparation of schedules in most cases involves no more care, and requires no greater amount or quality of legal advice, than, e. g., the drawing of the simplest deed of conveyance.

As to attendance at meetings of creditors, there being no showing of the extent or of the value, if any, of the attorneys' services, no more than a nominal fee of $5 is allowed.

A fee for preparation of petition for discharge, order of publication of notice of the hearing, and attendance at hearing, has been allowed by this court in the case of *Hitchcock*, a voluntary bankrupt, supra, and in the case of *Stratemeyer*, an involuntary bankrupt, supra.

Though this view has been doubted (see Collier, Bankruptcy, 9th ed. 844-845 and notes; 2 Remington, Bankruptcy, secs. 2087, 2090, 2097; Loveland, Bankruptcy, 3d ed. 161 and n. 23), and the question is, I think, an arguable

one, I am not disposed to doubt the correctness of the view of Judge Brown of New York, as to the law as it is written, if not as to the law as it should be,—adopted by Judge Dole of this court in the matter of *Hitchock*, supra.

But in view of the circumstances, and in view of the ruling on the petition for discharge, based, it is true, on acts of which the bankrupt's attorney was innocent and ignorant and which were committed even contrary to his instructions, no fee is allowed in this matter of discharge.

A larger fee might have been allowed had there been a showing of particulars requiring special or extraordinary advice in the matter of schedules, or had there been a showing that the creditors' meeting was something more than the usual routine affair of a few minutes only, or had there been a showing of services "beneficial to creditors" in addition to services "in assisting the bankrupt to perform his statutory duties." 2 Remington, Bankruptcy, 1294, sec. 2090; Id. 1295, sec. 2091; Collier, Bankruptcy, 9th ed., 844-845. The court, in making this award, errs, if at all, on the side of moderation, keeping in view an established and safe policy. See Collier, Bankruptcy, 9th ed., 845, and n. 77. And see *In re Kross,* 96 Fed. 816, 819, 3 Am. B. R. 187, 191.

Let the attorneys for the bankrupt be paid by the trustee out of the funds of this estate the sum of $30 as a fee for their services herein.