# IN THE MATTER OF VICENTE MUÑOZ, Bankrupt.

San Juan, Bankruptcy, No. 423.

Opinion filed May 23, 1923.

*Mr. E. Flores Colon* and *Mr. Sergio Gelpi* for the bankrupt.

*Mr. Vicente Zayas Pizarro* for creditors.

ODLIN, Judge, delivered the following opinion:

On May 2, 1923, while this court was sitting at Ponce, there was filed a verified petition on behalf of certain creditors of the above-named bankrupt, setting forth that in this case there had been held only one meeting of the creditors and that there has been no distribution of the assets of the bankrupt; also that it appears from the records of this case that the attorneys for the bankrupt, viz.: E. Flores Colon and Sergio Gelpi, performed no work herein except the preparation of the schedule and at-

tendance with the bankrupt himself at the first and only meeting of the creditors; also that the said attorneys did not include in the schedules any specified sum for their own fees; also that on or about June 6, 1922, the said attorneys filed with the former referee in bankruptcy, Mr. Arturo Ortiz Toro, a petition for the payment of their fees, and the said former referee on that same date, without consulting the creditors, and without calling a meeting of the creditors, and without any hearing whatever, issued an order at the request of said attorneys granting to them the sum of $1,200 as their fees. It is also alleged that these creditors were not notified of this allowance until about four days prior to May 2, 1923, and it is claimed that the said allowance is prejudicial to the interest of the creditors and to the estate of the said bankrupt. It is further set forth that the assets of the bankrupt consist of stock in trade, already sold by the trustee for the sum of $3,925, and also certain tracts of real estate heavily burdened by mortgages, which mortgages exceed the sum of $8,000, and that the value of said real estate over and above said mortgages is not over $4,000, which sum added to the $3,925 in cash produced by the sale of the stock in trade makes the value of the entire assets of the bankrupt $7,925, which sum will be reduced to about $7,000 after the expenses of administration are deducted.

It is therefore claimed that the above allowance to said attorneys of $1,200, as granted by the former referee in bankruptcy, is equivalent to about 18 per cent of the actual assets of the bankrupt, that the sum is grossly excessive, and therefore the petitioners pray this court to review the order of the former referee in bankruptcy herein made in June of 1922, and that said order be set aside in its entirety or that it be amended so

that said attorneys shall receive fees which are reasonable and proper, and that they be required to return to the trustee all such sum of $1,200 as is in excess of a reasonable and fair amount.

On the 4th day of May, 1923, the said attorneys E. Flores Colon and Sergio Gelpi filed a motion to dismiss the petition based upon the ground that the said petition was filed out of time. This court denied the motion to dismiss, and directed the said attorneys E. Flores Colon and Sergio Gelpi to answer the said petition on or before May 14, 1923. This time was afterwards extended until the 19th day of May, 1923, and on said last-mentioned date an answer was filed, based upon the contention that the fees due to attorneys for the bankrupt are part of the costs of administration, that they are entitled to priority, and that the judge or the referee is the sole arbitrator to determine the amount and time of payment. It is also claimed in and by said answer that while it is good practice to hold meetings of the creditors before ordering any kind of a payment, the costs of administering priority claims can be ordered to be paid without hearing the creditors.

Reliance is had upon the case entitled Re Stotts, reported in 93 Fed. 438. It is true that Judge Woolson, sitting in the southern district of Iowa in the year 1899, did hold that the question of allowing counsel fees as part of the costs of administration of a bankrupt's estate may be determined by the referee ex parte, and that notice to the creditors of the hearing thereon is not a prerequisite of the action taken by the referee in such matter, but Judge Woolson also holds that fees for legal services rendered to the bankrupt himself are not entitled to priority of payment out of the estate; he merely holds that

124

an allowance may be made to the attorney of the bankrupt for services rendered in preserving the estate pending the appointment of a trustee. In the particular case decided by Judge Woolson, while the case was pending before the referee, an allowance was made to an attorney of the sum of $150 for representing the bankrupt and also a sum of $125 as a fee to the same attorney as representing the trustee. The facts of the case reported in 93 Fed. are very different from the facts in the present case, because these attorneys, E. Flores Colon and Sergio Gelpi, never acted as attorneys for the trustee. The trustee employed as his attorney a member of the bar at Ponce by the name of Pedro Albizu Campos, who received the sum of $520 as fees for his services, this allowance being made by the same former referee in bankruptcy, Mr. Arturo Ortiz Toro. This matter of the allowance to Pedro Albizu Campos is also questioned, but has not yet been submitted to this court for consideration. The only matter before this court for decision at the present time is the matter of the payment of the $1,200 above referred to.

It is fair to say that the answer filed by these attorneys sets forth a claim that the amount involved in the bankrupt estate was over $30,000, and that there were held more than ten meetings of the creditors. But the answer is not verified, and I can well understand why it is not verified, because the record shows that the answer is not true.

Referring once more to the decision of Judge Woolson, while it is true that he says that in his opinion notice to credtors is not required before the referee can settle *proper* attoney's fees, it is clear to me that in the case now before me the ation taken by the referee was to settle *improper* attorney's fes.

Judge Woolson distinctly holds that the judge doubtless has power to take whatever steps are found necessary to correct any improper allowance and payment. He also says that the attorneys are on the roll of the court, subject to any proper order that the court may make. The conclusion to my mind is irresistible that an examination of this decision of Judge Woolson is really against the claims of these attorneys rather than in support thereof.

In reaching the result of my study of the petition and the attempt made to defend against the same, I have been guided largely by the decisions of other Federal judges. First, I refer to the case of Re Durand Mercantile Co. reported in 199 Fed. 961. This case was decided by the late Judge William H. Pope, presiding in the United States district court of New Mexico. In that case the estate involved $4,500; the fee claimed by the attorney for the bankrupt was $250, which the court reduced to $100, holding that $50 was ample compensation for preparing and filing the schedule and other papers necessary to the adjudication, and $25 was ample allowance for attending the bankrupt brought before the referee, and $25 more for securing a stay order against the prosecution of the case in the state court. This case was decided in 1912, and I recognize the fact that the cost of living in those days was much less than at present. Therefore, instead of limiting these attorneys to $100 I propose to allow them $200. I may say here incidentally that if I were practising law in Porto Rico I would be immensely pleased in any case to do what these attorneys did and receive $200 therefor. Therefore, I am not treating these attorneys with any more harshness in the reduction of their fee from $1,200 to $200 than I would expect to receive

myself if I took $1,200 by the permission of a careless referee when I was only entitled to $200.

It might be argued that the allowance should be larger because two attorneys were employed instead of one. This theory is exploded by another decision of Judge Pope, reported in 206 Fed. 835, the case being decided in 1913, and entitled Re Falkenberg. He specifically holds in this case that the number of attorneys employed by a bankrupt's receiver is not an element to be considered in allowing fees, but the allowance should be made as though only one attorney were employed. The same rule must apply in the case of attorneys for the bankrupt himself. In that case the attorney for the receiver claimed $150 and the court reduced it to $100.

There is also a very pertinent case reported in 146 Fed. 140. It is entitled Re Oppenheimer, decided in 1906 by Mr. District Judge Archbald in Pennsylvania. In that case the receiver asked that he be allowed credit for $400, fees paid to two attorneys. Two hundred dollars of this money went to Mr. Dando, who was employed by the receiver, and $200 went to Mr. Davis, an attorney employed by the petitioning creditors. The court disallowed entirely the item of $200 paid to Mr. Davis, and the item of $200 paid to Mr. Dando was reduced to $100.

But there is a very late utterance of the Supreme Court of the United States on this subject of fees allowed to attorneys in bankruptcy proceedings. It is impossible for me to disregard the feeling which is so prevalent throughout many of the forty-eight states of the Union, as well as in the Island of Porto Rico, that the administration of the Bankruptcy Act of the Congress of the United States has caused great disgust and in some instances great distrust in commercial and banking

circles by reason of excessive fees paid to lawyers; and this condition of affairs has in some instances been almost scandalous. If the former referee in bankruptcy in Ponce, Mr. Arturo Ortiz Toro, could turn over to the attorneys for the bankrupt the sum of $1,200, I do not see what would prevent him from turning over to those same attorneys $4,200, had they asked it. To say that the creditors had no relief from such proceedings is to cast discredit upon this court. The late utterance of the Supreme Court of the United States to which I refer is an interesting case and is entitled Watkins v. Sedberry. The decision was rendered April 9, 1923, 261 U. S. 571, 67 L. ed. 802, 43 Sup. Ct. Rep. 411, the opinion being written by Mr. Justice Butler, all the other members of the court concurring. The case itself is a very interesting one. It involved the question of proper fees and expenses to be allowed counsel for a trustee in an important bankruptcy proceeding. The debts which existed at the time of the filing of the petition in bankruptcy, and which were afterwards proved and allowed amounted, to $21,000 with interest. It seems, however, that there were concealed assets, and in order to bring these concealed assets into the fund an important suit was brought against the bankrupt himself and his family, which suit was successful, the value of the property being almost $100,000. There had been a written contract between the trustee and his counsel, the details of which contract are set out carefully in the opinion of Mr. Justice Butler, the substance of the contract being that the counsel employed were to bear the necessary expenses of the suit and to protect the trustee against all damages and expenses growing out of such employment, and that in case the suit should be successful there should be, first, chargeable

128

against the property recovered any amounts expended by the counsel in prosecuting the suit, and then the balance should be divided equally between the trustee and the counsel. On the basis of this contract, counsel claimed $49,000 for fees and $1,127 for expenses. The district judge held that this contract was illegal, but did allow the counsel the sum of $7,500 for his fee. The claim of $1,127 for expenses not being itemized, the district judge cut it down to $750 after the counsel had declined to furnish items. The case then went to the circuit court of appeals for the sixth circuit, the decision being reported in 275 Fed. 894. The circuit court of appeals vacated the ruling of the district judge allowing only $7,500 as a fee, and sent the case back to the district judge, leaving the latter at liberty to use his own discretion in again fixing the amount. The case then went, by means of the usual route of certiorari, to the highest court that we have, whereupon the decree of the circuit court of appeals was reversed and the decree of the district judge was affirmed. This is the latest utterance on this subject that I have been able to find, and at the same time the most important.

I therefore hold that the said attorneys, E. Flores Colon and Sergio Gelpi, must return to the trustee the sum of $500 each, provided that the said sum of $1,200 was divided between them equally, as is presumable. If, however, the division was unequal, E. Flores Colon will deliver all that he received in excess of $100, which he may retain, and Sergio Gelpi likewise must return to the trustee all that he received in excess of $100. These payments must be made on or before the 2d day of June, 1923.

To this ruling E. Flores Colon and Sergio Gelpi except.

Done and ordered in open court at San Juan, Porto Rico, this 23d day of May, 1923.